NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1885.

## KURST v. PATON.

*In the matter of the judicial settlement of the account
of* DAVID PATON, *as trustee under the will of*
JOHN KURST, *deceased.*

Testator's will, after bequeathing a life interest in the residue of his estate
to his wife for her maintenance, and the maintenance and education of
their children until they became self-supporting, directed that, after
the widow's death, all such property as then remained be disposed of,
and the proceeds be divided "equally among the children I may then
have, *or those who may be legally entitled thereto.*" When the will
was executed, testator had three children, of whom one died before
him without issue, another before testator's widow, leaving a widow
and children, and the third, J., survived both his parents.—

*Held*, that J., as the sole survivor of his mother, was entitled to the ex-
clusive benefit of the ultimate disposition made by the will, the intent
of the italicized words being that, in the event of the death of all the
children in the widow's lifetime, and only in such contingency, the
property should eventually pass under the statute providing for distri-
bution in cases of intestacy.

The word, "children," occurring in a will which furnished no evidence of
a design to adopt a special and more extended meaning,—

*Held*, to apply only to offspring in the first degree, and to exclude grand-
children, in accordance with the doctrine asserted in Kirk v. Cashman,
3 *Dem.*, 242.

UPON the judicial settlement of the account of
David Paton, as trustee under decedent's will, John
B. Kurst, a son of decedent, claimed the entire resi-
due, which was ready for distribution to the persons
entitled. Further facts appear in the opinion.

JESSE K. FURLONG, *for John B. Kurst.*

VAN DUZER & TAYLOR, *for trustee.*

THE SURROGATE.—Upon the accounting of this tes-
tator's trustee, a question has arisen as to the con-
struction of the ninth article of his will.  The third
article gives his widow a life interest in the residue,
in trust for her own support, for the support, educa-
tion and maintenance of their child, Julia, until she
shall be able to provide for herself, and also for the
support, education and maintenance of any other
children that may be afterwards born to them, until
such other children shall also become self-supporting.
The fifth article directs that, in the event of the death
of the widow, before the time shall have arrived when
the daughter Julia, and such other child or children
as may thereafter be born, shall be able to provide
for themselves, the executor shall make provision for
such daughter, and such other child or children, until
they shall respectively cease to require it.  Clause
sixth orders the investment of the net income of the
estate in the event of the decease of the widow before
the youngest child shall arrive at the age of twenty-
one.  The seventh and eighth clauses are for present
purposes unimportant.

The ninth is as follows :  " I order and direct that,
after the decease of my said wife, and after my
youngest child shall arrive at the age of twenty-one
years, my executor, or such person as may then
legally represent my said estate and the interest of
my said children, shall dispose of all such property as
may then remain of my estate, . . . . . and, after
first deducting all necessary expenses, divide the pro-
ceeds thereof, together with all other property be-
longing to my said estate equally *among the children*

*I may then have, or those who may be legally entitled thereto."*

At the time of the execution of the will, in 1858, the testator had three living children, John, Charles and Julia. Of these, John alone is living. Julia, the youngest, died in her father's lifetime, and without issue. Charles outlived the testator, but pre-deceased his mother, leaving a wife and two children, who still survive, and are represented by counsel in this proceeding. John claims the whole of the residue now ready for distribution. The widow of Charles claims such share as she would have been entitled to receive if her husband had outlived his mother, and, without receiving his share in the estate, had died intestate. The children of Charles contend that, under the ninth clause of the will, the proceeds of the residue should be divided either into two equal parts, one half for their uncle John, and the other half for themselves, or into three equal parts, whereof he should be accorded one, and they the two remaining.

It seems to me that the testator, in providing for distribution " equally among the children I may then have, *or* those who may be legally entitled thereto," *intended* that such of his children as might outlive his widow should enjoy the exclusive benefits of this provision, and *did not intend* that the words, " or those who may be legally entitled thereto," should become operative save in the event of the death of all such children in the lifetime of their mother. In that contingency, and in that contingency only, his purpose as here expressed, was that the property disposed of by the ninth clause should be divided among those persons

who, under the laws of this State, would be entitled thereto in the absence of any testamentary direction for its disposition.   There is nothing in this will to indicate that the word " children " is used in any other sense than in that which the law always ascribes to it in the absence of evidence that it was intended to have a special and more extended meaning.   I hold, therefore, that that word does not include the children of the testator's son, Charles, and that his son John is entitled to the whole of the proceeds here in dispute (Kirk v. Cashman, 3 *Dem.*, 242, and cases cited).